IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE FRAIN GROUP, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 14 C 7097 |
| STEVE'S FROZEN CHILLERS, | ) Judge Virginia M. Kendall |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

The Frain Group, Inc. instituted this action against Steve's Frozen Chillers, Inc. after the parties' business relationship surrounding a purchase agreement went sour. Frain's three-count Complaint seeks (1) a declaratory judgment that the purchase agreement is valid and enforceable and brings state law claims for (2) defamation and (3) tortious interference with prospective business relationships. Frain alleges that it sold a refurbished Prodo Pak Form & Fill Machine to Steve's for use in the production of Steve's Healthy Fruit Chillers Freezer Tubes. After Steve's experienced numerous problems with the Prodo Pak Machine, Frain alleges that Steve's posted a number of defamatory statements on Frain's Facebook page that were false and interfered with Frain's relationships with its current and prospective customers. In response, Steve's filed a three-count Counterclaim, alleging (1) breach of contract, (2) violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.*, and (3) breach of implied warranties.

Both parties move to partially dismiss the claims filed by the other pursuant to Federal Rule of Civil Procedure 12(b)(6). Steve's moves to dismiss Frain's defamation and tortious interference claims while Frain moves to dismiss Steve's breach of implied warranties claim.

Frain also moves to strike both of Steve's affirmative defenses in its Answer pursuant to Federal Rule of Civil Procedure 12(f). For the reasons set forth below, the Court grants in part and denies in part Steve's motion to dismiss Counts II and III of Frain's Complaint (Dkt. No. 11), grants Frain's motion to dismiss Count III of Steve's Counterclaim (Dkt. No. 18), and grants in part and denies in part Frain's motion to strike (Dkt. No. 21). Count III of Frain's Complaint is dismissed without prejudice, Count III of Steve's Counterclaim is dismissed with prejudice, and Steve's first affirmative defense is stricken without prejudice.

## **BACKGROUND**

The Court takes the following allegations from the Complaint and Counterclaim and treats them as true for purposes of these motions. *See Vinson v. Vermillion County, Ill.*, No. 12-3790, 2015 WL 343673, at *1 (7th Cir. Jan. 27, 2015).

Frain is an Illinois corporation with its principal place of business in Carol Stream, Illinois that refurbishes, sells, and services pre-owned packaging and processing equipment. (Dkt. No. 1, Compl. at ¶ 1.) Steve's is a Florida corporation with its principal place of business in Boynton Beach, Florida that manufactures and supplies pre-packaged drink mixes. (*Id.* at ¶ 2.) Between March and May 2014, Frain and Steve's negotiated a contract for the reconditioning, sale, and setup of a used Prodo Pak Machine for use in Steve's drink production. (*Id.* at ¶¶ 6-7.) On May 20, 2014, Steve's agreed to purchase the Prodo Pak Machine on an expedited basis and Frain agreed to complete the project in four weeks for an additional fee. (*Id.*) Steve's agreed to Frain's terms and conditions by signing Frain's Project Acceptance. (*Id.* at ¶¶ 12-13.)

Frain received the preliminary material needed to refurbish the Prodo Pak Machine on June 6, 2014. (*Id.* at ¶ 15.) After Steve's agent, David Schoenberg, conducted a Factory Acceptance Test for Steve's, Frain shipped the Prodo Pak Machine on June 30, 2014. (*Id.* at

¶¶ 17, 18.) Steve's encountered numerous problems with the Prodo Pak Machine after its delivery. (*Id.* at ¶ 19.) On multiple occasions, Frain serviced the Prodo Pak Machine and trained Steve's employees on its proper operation and maintenance. (*Id.*) After several visits, Steve's refused to pay the costs of Frain's additional service and training and Frain accordingly ceased servicing the Prodo Pak Machine. (*Id* at ¶ 20.) Frain alleges that Steve's problems with the Prodo Pak Machine stemmed from improper operation and not from any structural or mechanical deficiencies. (*Id.*)

Steve's posted a full-page statement on Frain's Facebook page regarding the Prodo Pak Machine on August 23, 2014. (*Id.* at ¶ 31; Dkt. No. 1-1, Ex. I, Facebook Post.)[1] Steve's titled the Facebook Post "Don't Get Ripped Off By The Frain Group!" (Compl. ¶ 32(a).) The Facebook Post contained a number of other statements regarding the efficacy of the Prodo Pak Machine, including: "John Frain told me it was a 6 year old machine. It is 18 years old!," "It was a shell of an 18 year old ProdoPak machine," "machine [] had been incorrectly rebuilt and *could not* work properly," "butchered piece of junk," "The person [Frain] sent had NEVER operated this type of machine and could not keep it running," "the machine could not handle" the temperatures required by Steve's process, and "[Frain] refused to come back and fix it." (*Id.* at ¶ 32(b-h); Facebook Post.) Frain disputes the veracity of every statement Steve's made in its post. (*Id.*) Frain contends that Steve's refused to remove the post or issue an apology and that Frain has suffered damages as a result. (*Id.* at ¶¶ 33-35.)

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be

---

[1] The Court considers exhibits attached to the Complaint when resolving a motion to dismiss. *See Carmody v. Bd. of Trs. of Univ. of Ill.*, 747 F.3d 470, 477 (7th Cir. 2014).

3

granted. Fed. R. Civ. P. 12(b)(6); *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). All well-pled facts are taken as true and viewed in the light most favorable to the plaintiff, *Hatmaker v. Mem'l Med. Ctr.,* 619 F.3d 741, 742–43 (7th Cir. 2010), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## DISCUSSION

**I.    Steve's Motion to Dismiss Counts II and III of Frain's Complaint**

Steve's moves to dismiss Frain's defamation and tortious interference claims, arguing primarily that (1) the alleged defamatory statements are nothing more than non-actionable opinions and (2) Frain failed to factually substantiate its tortious interference claim and only alleged conclusory statements. Because a majority of Steve's alleged statements on the Facebook Post constitute objectively verifiable facts, the Court denies Steve's motion to dismiss Frain's defamation claim. The Court grants Steve's motion with respect to Frain's tortious interference claim, however, because Frain failed to plausibly allege it had a reasonable expectation of entering into a valid business relationship through Facebook or that Steve's knew of Frain's expectation. Accordingly, Count III of the Complaint is dismissed without prejudice.

**A.    Defamation**

Frain brings a defamation *per se* claim based on Steve's statements in the Facebook Post.[2] Under Illinois law, "[a] defamatory statement is a statement that harms a person's

---
[2] Although Frain did not expressly label its defamation claim as *per se* in its Complaint, Frain argued the statements are defamatory *per se* in its Response brief. Because the statements fall within two of the five defamation *per se*

4

reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Green v. Rogers*, 234 Ill.2d 478, 491 (2009). The elements of a defamation claim are "that the defendant mad a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Id.* In a defamation *per se* action, damage is presumed if the statement falls within one of the five defamation *per se* categories recognized in Illinois:

> (1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable disease; (3) statements imputing an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication.

*Tuite v. Corbitt*, 224 Ill.2d 490, 501 (2006). Even if a statement falls within one of these categories, it is not actionable if it is reasonably capable of an innocent construction. *Id.* at 502.

When applying the innocent construction rule, "courts must interpret the words 'as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader.' " *Id.* at 512 (quoting *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill.2d 77, 93 (1996)). The innocent construction rule "requires a court to consider the statement in context and give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2008). The Court considers several nonexclusive factors when determining whether a statement qualifies as an opinion or factual assertion: "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content." *Id.* (citing *J. Maki. Constr. Co. v. Chicago Reg'l Council of*

---

categories and Frain's elaboration in its Response is consistent with its Complaint, the Court construes Frain's claim as one of defamation *per se*. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) ("A party [opposing] a Rule 12(b)(6) dismissal may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings.").

5

*Carpenters*, 379 Ill. App. 3d 189, 200 (2008)). Only statements that cannot reasonably be interpreted as stating actual facts are protected under the First Amendment. *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 14 (1992).

Here, Steve's does not dispute that it made the alleged statements or that it published the statements; instead, it contends that the statements are non-actionable opinions. But because the bulk of the statements are objectively verifiable factual statements, the Court denies Steve's motion to dismiss Frain's defamation claim.

Statements that do not contain verifiable facts, such as opinions or rhetorical hyperbole, are not actionable as defamation. *Madison*, 539 F.3d at 654. Statements that do not concern the plaintiff are similarly not actionable as defamation. *See BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 820 (7th Cir. 2008) (citing *Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill.2d 558, 579 (2006)). Frain alleges that a number of the statements in the Facebook Post fall within the third and fourth defamation *per se* categories, while Steve's argues that the statements are merely portions of a customer's review and opinions of a machine it purchased.

Read in context, the majority of the material in the Facebook Post suggests that Frain misrepresented the Prodo Pak machine and its abilities to service the machine when negotiating with Steve's. Steve's statements that (1) Frain told them the Prodo Pak Machine was six years old when it was actually eighteen, (2) the Prodo Pak Machine had been incorrectly rebuilt and could not work properly, (3) Frain's employee had never operated a Prodo Pak Machine, (4) the Prodo Pak Machine could not handle the temperatures required by Steve's, and (5) Frain refused to come back and fix the machine absent a $1900 payment are all objectively verifiable statements of fact. Further, because the statements directly attack Frain's business dealings and representations, they qualify as defamation *per se*. *See Cody v. Harris*, 409 F.3d 853, 857 (7th

6

Cir. 2005) (for statements to fall under the third and fourth defamation *per se* categories, "the plaintiff must have been accused of lacking ability in his trade or doing something bad in the course of carrying out his job") (collecting Illinois cases). Because Frain's alleged "want of integrity" here is in performing its employment and professional duties, the above statements constitute defamation *per se*. *See Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1025 (2001).

Not all of the statements found within the Facebook Post qualify, however. Steve's commentary interspersed among its factual declarations do not support a defamation claim. The statements suggesting that Frain "ripped off" Steve's and that the Prodo Pak Machine was a "butchered piece of junk" are non-actionable statements of opinion incapable of being objectively verified. *See Pease v. Int'l Union of Operating Eng'rs Local 150, et al.*, 208 Ill. App. 3d 863, 870 (1991) ("Words that are mere name calling or found to be rhetorical hyperbole or employed only in a loose, figurative sense" are nonactionable). Accordingly, Count II of Frain's Complaint survives with respect to the statements in the Facebook Post regarding Frain's representations of the Prodo Pak Machine and Frain's ability to service the machine.

### B. Tortious Interference with Prospective Business Relationships

Frain's tortious interference claim fares worse than its defamation claim. To state a claim for tortious interference with prospective economic advantage under Illinois law, Frain needed to allege "(1) a reasonable expectancy of entering into a valid business relationship, (2) [Steve's] knowledge of the expectancy, (3) an intentional and unjustified interference by [Steve's] that induced or caused a breach or termination of the expectancy, and (4) damage to [Frain] resulting from [Steve's] interference." *Voyles v. Sandia Mortgage Corp.*, 196 Ill.2d 288, 300-01 (2001). A reasonable expectancy of future business "requires more than the hope or opportunity of a future

7

business relationship." *See, e.g.*, *Huon v. Breaking Media, LLC*, No. 11 C 03054, 2014 WL 6845866, at *16 (N.D. Ill. Dec. 4, 2014); *Quantum Foods, LLC v. Progressive Foods, Inc.*, No. 12 C 1329, 2012 WL 5520411, at *3 (N.D. Ill. Nov. 14, 2012); *Business Sys. Eng'g, Inc. v. Int'l Bus. Mach. Corp.*, 520 F. Supp. 2d 1012, 1022 (N.D. Ill. 2007).

In its Complaint, Frain only alleges that "Steve's actions . . . have threatened to interfere with Frain's relationships with current and prospective customers. Specifically, Steve's has intentionally disseminated false and misleading information in an attempt to convince actual and potential customer[s] not to do business with Frain. Frain has been damaged . . . and believes that it has and will continue to lose business as a result of Steve's conduct . . . ." (Compl. ¶¶ 37-38.) These conclusory statements, without factual support that Frain actually had a reasonable expectation of new business and that Steve's conduct interfered with that business, are insufficient to allege that Frain had a reasonable business expectancy. *See, e.g.*, *Huon*, 2014 WL 6845866 at 16 (allegations that plaintiff had an "expectancy of entering into valid business relationships with members of the public" and had suffered "a decline in business" were insufficient to state a claim for tortious interference); *Del Monte Fresh Produce, N.A., Inc. v. Kinnavy*, No. 07 C 5902, 2010 WL 1172565, at *6 (N.D. Ill. Mar. 22, 2010) ("*Twombly* [requires a plaintiff] set forth facts that make it plausible that she had a reasonable expectancy . . ."). At best, the statements establish that Frain hoped to garner new business opportunities through its Facebook page. That allegation is not enough to state a claim for tortious interference with prospective business relationships. Because Frain's tortious interference claim relies solely on threadbare conclusions and is unsupported by factual allegations, the Court dismisses Count III of the Complaint without prejudice.

8

## II. Frain's Motion to Dismiss Count III of Steve's Counterclaim

Frain moves to dismiss Steve's claim for breach of the implied warranties of merchantability and fitness for a particular purpose. To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect. *See* 810 ILCS 5/2-314; *see also, e.g.*, *Baldwin v. Star Scientific, Inc.*, No. 14 C 588, 2015 WL 170407, at *12 (N.D. Ill. Jan. 13, 2015). Similarly, to succeed on its claim of breach of an implied warranty of fitness for a particular purpose, Steve's must demonstrate that Frain, at the time of contracting, had reason to know a particular purpose for which Steve's required the Prodo Pak Machine, that Steve's relied on Frain's skill or judgment to select or furnish suitable goods to achieve that purpose, and that the goods were not suitable to meet that purpose. *See* 810 ILCS 5/2-315. Frain does not dispute that Steve's Counterclaim pleads these elements; instead, Frain contends that the parties' contract disclaimed these implied warranties. Because the contract to purchase the Prodo Pak Machine does expressly and conspicuously disclaim the two implied warranties Steve's now seeks to enforce, the Court grants Frain's motion to dismiss Count III of the Counterclaim.

"[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." 810 ILCS 5/2-316(2). Whether a particular term is conspicuous is a determination to be made by the Court "by asking if attention can reasonably [be] expected to be called to the term or clause." *R.O.W. Window Co. v. Allmetal, Inc.*, 367 Ill. App. 3d 749, 753 (2006). According to the UCC, "[a] term or clause is conspicuous when it is so written that a reasonable

person against whom it is to operate ought to have noticed it." *Id.*; *see also* 810 ILCS 5/1-201(10).

Here, the "Terms and Conditions of Sale" within the contract to purchase the Prodo Pak Machine states that: "THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF AND SELLER HEREBY EXCLUDES ANY AND ALL WARRANTIES OF ANY NATURE OR KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE." (Dkt. No. 15-4, Steve's Counterclaim Exhibit D-8.) This written disclaimer is conspicuous. In the contract, the disclaimer is contained in a section titled "Terms and Conditions of Sale." The disclaimer is printed in all capital letters and is surrounded by lowercase text. *See* 810 ILCS 5/1-201(10)(B) ("Conspicuous terms include . . . language in the body of a record or display in larger type than the surrounding text . . ."). Moreover, the language used expressly disclaims the implied warranties now sought. Steve's tries to minimize the significance of the section by arguing that the two sections titled "terms and conditions" found within the contract are confusing, but this position is belied by Steve's own allegation in its Counterclaim that it "signed and returned the Project Acceptance (D-5) incorporating in it The Frain Group Terms and Conditions (D-4) and/or Terms and Conditions of Sale (D-8, D-9, D-10)". (Dkt. No. 14, Counterclaim ¶ 16.)

The disclaimer at issue therefore meets the test for conspicuousness. Though there are two sections labeled "terms and conditions," merely skimming the contract draws attention to the disclaimer found within the Terms and Conditions of Sale, printed in all capital letters and in a larger font than the surrounding text. *Cf. R.O.W. Window*, 367 Ill. App. 3d at 751 (disclaimer was conspicuous where it "was the only text on the page to be listed in all capital letters"); *Shurland*

10

*v. Bacci Café & Pizzeria on Ogden, Inc.*, No. 08 C 2259, 2010 WL 3835874, at *6 (N.D. Ill. Sept. 24, 2010) (disclaimer that was printed in the same font size as the rest of the agreement but in all capital letters was conspicuous). Additionally, the contract itself is only ten pages in its entirety. The Court therefore concludes that a "reasonable person" would have been able to discover the warranty disclaimer through a relatively cursory investigation of the contract. The Court's decision is bolstered by the fact that the transaction here is between two business entities, as courts are "less reluctant to hold [business entities] to the terms of contracts to which they have entered than consumers dealing with skilled corporate sellers." *R.O.W. Window*, 367 Ill. App. 3d at 754 (citing *Bowers Mfg. Co., Inc. v. Chicago Mach. Tool Co.*, 117 Ill. App. 3d 226, 233 (1983)). Because the contract expressly disclaims the warranties of merchantability and fitness for a particular purpose, a defect that Steve's cannot correct with an amended pleading, the Court dismisses Count III of Steve's Counterclaim with prejudice.

### III. Frain's Motion to Strike Steve's Affirmative Defenses

Frain also moves to strike both of Steve's affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). Under Rule 12(f), a court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "disfavored" because they "potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). But where such motions "remove unnecessary clutter from the case, they serve to expedite," rather than delay. *Id.* As pleadings, affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure. *Id.* Accordingly, "bare bones conclusory allegations" that fail to address the necessary elements of a proposed defense are insufficient. *Id.* at 1294-95. The decision to strike

under Rule 12(f) is a discretionary one. *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141-42 (7th Cir. 2009).

Even under the liberal pleading standards of the Federal Rules of Civil Procedure, an affirmative defense "must include direct or inferential allegations as to all elements of the defense asserted." *See, e.g.*, *LaSalle Bank Nat'l Ass'n v. Paramount Props.*, 588 F. Supp. 2d 840, 860 (N.D. Ill. 2008). Steve's first affirmative defense asserts, in its entirety: "Without waiving the general denial herein, this Defendant states that Count I of plaintiff's complaint fails to state a claim upon which relief may be granted and should be dismissed accordingly." (Dkt. No. 14, Answer at 11.) Although the defense of "failure to state a claim" can be properly raised as an affirmative defense, *see, e.g.*, *Gleike Taxi Inc. v. DC Tops LLC*, No. 13 CV 06715, 2015 WL 273682, at *7 (N.D. Ill. Jan. 20, 2015); *Wylie v. For Eyes Optical Co.*, No. 11 CV 1786, 2011 WL 5515524, at *2 (N.D. Ill. Nov. 10, 2011); *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 905 (N.D. Ill. Nov. 6, 2006), Steve's has failed to adequately plead this defense in accordance with Federal Rule of Civil Procedure 8. The grounds upon which Steve's bases its affirmative defense are unstated. Steve's has not set forth "any of the minimal specifics required by Rule 8 to provide [Frain] any notice as to how and in what portion" of Count I Frain has failed to adequately state a claim. *See, e.g.*, *Wylie*, 2011 WL 5515524 at *2; *Paramount Props.*, 588 F. Supp. 2d at 860-61; *Reis*, 462 F. Supp. 2d at 905 (striking affirmative defense of failure to state a claim that did not incorporate by reference any allegations of the counterclaims or state which of the counterclaim allegations supported the defense); *Reynalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 803-04 (N.D. Ill. 2000) (striking failure to state a claim defense because it failed to identify specific deficiencies in the complaint). Accordingly, Steve's first affirmative defense is stricken without prejudice.

Steve's second affirmative defense states: "Plaintiff's claims are barred, in whole or in part, by the doctrine of mootness as this Defendant has filed a separate counterclaim against the Plaintiff, which is presently pending in the Northern District of Illinois and material to claims alleged in the present complaint." (Dkt. No. 14, Answer at 11.) Federal courts lack subject matter jurisdiction when a case becomes moot. *See Medlock v. Trs. of Ind. Univ.*, 683 F.3d 880, 881 (7th Cir. 2012). Under the Federal Rules of Civil Procedure, the Court must dismiss an action if it determines at any point that it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While Steve's second affirmative defense is lacking in factual detail, the gist of the defense is clear: because Steve's has filed a Counterclaim alleging that Frain breached the contract between the parties, Steve's necessarily must not dispute that the contract is valid and enforceable. This defense, however, only corresponds to Count I of Frain's Complaint. The Counterclaim is completely unrelated to and has no effect on Frain's defamation and tortious interference claims. Accordingly, the defense survives as to Frain's declaratory judgment claim. Moreover, the Court finds there to be no prejudice to Frain in permitting the second affirmative defense to remain as pleaded in the Answer. The Court therefore denies Frain's motion to strike Steve's second affirmative defense.

## **CONCLUSION**

For the reasons stated herein, the Court grants in part and denies in part Steve's motion to dismiss, grants Frain's motion to dismiss, and grants in part and denies in part Frain's motion to strike. Count III of Frain's Complaint is dismissed without prejudice, Count III of Steve's Counterclaim is dismissed with prejudice, and Steve's first affirmative defense is stricken without prejudice.

*[signature: Virginia M. Kendall]*

United States District Court Judge
Northern District of Illinois

Date: 3/10/2015